1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIMBERLY L.N.,

               Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

Case No. C22-1722-SKV

ORDER REVERSING THE
COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of her 2017 and 2021 applications for Disability Insurance Benefits (DIB).[1]  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings.

## BACKGROUND

Plaintiff was born in 1966, has a college degree, and has worked as a data entry clerk and a general hardware salesperson.  AR 39, 305, 913.  Plaintiff was last gainfully employed in October 2017.  AR 305, 917.

---

[1] In October 2023, the parties filed a joint statement in which Plaintiff clarified that her related 2017 and 2021 SSI applications were not at issue before the Court on appeal.  *See* Dkt. 24.

This case has a lengthy procedural history.  Plaintiff originally filed a DIB application in February 2015 ("2015 application"), alleging disability as of July 25, 2014.  AR 115.  Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing.  AR 115.  ALJ Eric Basse conducted a hearing on February 7, 2017, and issued a partially favorable decision in October 2017.  AR 34-67, 115-29.  ALJ Basse found that Plaintiff was disabled from July 25, 2014, through November 1, 2015, and that beginning on November 2, 2015, Plaintiff's disability ended as a result of medical improvement.[2]  AR 124-29.

In determining that Plaintiff was disabled during the closed period, ALJ Basse found that Plaintiff "had a long prior history of documented headaches," and that "the medical evidence demonstrates that [Plaintiff] had frequent headache episodes and required abundant treatment." AR 121.  ALJ Basse acknowledged evidence that Plaintiff was dismissed from a treating practitioner's medical practice in September 2014, for overusing medications, including a fentanyl patch, and additional evidence that Plaintiff's primary care provider discussed concerns regarding her addiction to pain medications.  AR 122.  However, ALJ Basse found that the concerns were not "material," because they were not "lasting concerns," and credited Plaintiff's testimony regarding her headaches and depression in finding her disabled.  AR 121-22.

Two months after ALJ Basse's decision, on December 15, 2017, Plaintiff again applied for DIB and SSI ("2017 applications"), alleging disability as of December 1, 2017.  AR 241-48. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing.  AR 135-48, 150-63.  ALJ Glenn Myers conducted a hearing on June 18, 2020, and in July 2020, issued a decision finding Plaintiff not disabled.  AR 68-110, 12-33.  In February 2021,

---

[2] Plaintiff requested only a closed period of disability from July 25, 2014, through November 1, 2015, testifying at the February 7, 2017 hearing, that once she started getting botox treatments and using a fentanyl patch in 2015, it "made a big difference in [her] daily headaches."  AR 42.

1  the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

2  Commissioner's final decision.  AR 1003-08.

3       Subsequently, on March 17, 2021, and May 6, 2021, Plaintiff again filed with the SSA

4  additional applications for DIB and SSI benefits, respectively ("2021 applications").  AR 1216-

5  17, 1231-37.  Meanwhile, in April 2021, Plaintiff appealed ALJ Meyers' July 2020 decision on

6  her 2017 applications to this Court.  AR 1009-11 (C21-0441-DWC).

7       On January 31, 2022, the Court reversed and remanded Plaintiff's 2017 DIB and SSA

8  applications for a new hearing and decision by an ALJ.[3]  AR 1018-25 (C21-0441-DWC).  Soon

9  thereafter, in March 2022, in conjunction with the Court's order, the Appeals Council remanded

10  Plaintiff's 2017 applications to an ALJ for further proceedings.  AR 1028.  In that remand order,

11  the Appeals Council additionally noted Plaintiff's subsequently filed 2021 applications, and

12  ruled that the 2021 applications were duplicative of the 2017 applications such that the ALJ on

13  remand was ordered to "consolidate the claims files, associate the evidence, and issue a new

14  decision on the consolidated" 2017 and 2021 applications.  AR 1028.  Meanwhile, just several

15  weeks later in April 2022 – in spite of the Appeals Council's consolidation order – the SSA ruled

16  on Plaintiff's 2021 applications on initial review at the administrative level, and found Plaintiff

17  disabled as of March 17, 2021.[4]  AR at 1046-47, 1062-63; *see also* AR 958-59.

18       ALJ Meyers held a hearing on remand on September 6, 2022, and, in his subsequent

19  October 2022 decision, acknowledged the SSA's intervening April 2022 administrative ruling on

20  Plaintiff's 2021 SSI and DIB applications finding Plaintiff disabled.  AR 957-59.  Additionally,

21

22  [3] In that order, the Court stated that it was reviewing both Plaintiff's 2017 SSI *and* DIB applications.  AR 1018.

23  [4] It is unclear from the record and the parties' papers whether that was a mistake given the Appeals Council's order for consolidation of the applications the month before the SSA's administrative decision.

1    ALJ Meyers noted that while his own prior July 2020 decision purported to adjudicate both

2    Plaintiff's 2017 DIB and SSI applications, he was mistaken because "[o]nly a Title II [DIB]

3    claim was before [him] at the hearing level" in 2020.  AR 893 n.1 (noting in 2022 that his

4    statement that "the [2020] decision indicated a concurrent Title II [DIB] and Title XVI [SSI]

5    filing . . . was [in] error"); *see* AR 984, 998 (2020 decision states that it concerns Plaintiff's 2017

6    SSI and DIB claims).  ALJ Meyers subsequently disagreed with the SSA's administrative

7    findings on Plaintiff's 2021 applications that Plaintiff became disabled on March 17, 2021,

8    instead finding that Plaintiff did not become disabled on her consolidated 2017 and 2021

9    applications until November 8, 2021, when she reached the advanced age of fifty-five years old.

10   [5]  AR 914.

11        Because it was unclear to the Court from the record and the parties' papers which 2017

12   and 2021 SSI and/or DIB applications were the subject of Plaintiff's instant appeal, following the

13   completion of briefing, the Court ordered supplemental statements on the issue.  *See, e.g.,* Dkt. 5

14   (Plaintiff's Complaint stating that she challenges the Defendant's decisions on both her SSI and

15   DIB claims).  In an October 2023 joint statement, the parties agreed that Plaintiff's 2017 SSI

16   claim was not at issue before ALJ Meyers in 2022, and, therefore, is also not at issue before the

17   Court now.  Dkt. 24.  Plaintiff additionally clarified that she was not challenging on appeal the

18   ALJ's resolution of her 2021 SSI claim..  Dkt. 24.  Accordingly, the Court adjudicates below

19   Plaintiff's appeal of the ALJ's October 2022 final decision on her 2017 and 2021 DIB claims

20   only.

21

22   [5] Additionally, in his 2022 decision, ALJ Meyers acknowledged ALJ Basse's prior partially favorable
     October 2017 decision, and found that Plaintiff had not requested to reopen that prior decision. AR 894.

23   ALJ Meyers stated that he would "adopt the findings from [ALJ Basse's 2017] decision unless new and
     material evidence warrants a change in those findings."  AR 894-95.

# THE ALJ's DECISION

For the period of time from Plaintiff's December 1, 2017 onset date until her age change effective November 8, 2021, the ALJ utilized the five-step disability evaluation process,[6] and found:

> **Step one**:  Plaintiff has not engaged in substantial gainful activity since December 1, 2017.
>
> **Step two**:  Plaintiff has the following severe impairments: migraines; fibromyalgia; spine condition; depressive/bipolar disorder; personality disorder; somatic symptom disorder; and anxiety disorder.
>
> **Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[7]
>
> **Residual Functional Capacity**:  Plaintiff can perform light work.  She can understand, remember, and carry out simple instructions and tasks, and make simple, work-related decisions.  She can have no contact with the public, can work in proximity, but not in coordination with coworkers, and can have occasional contact with supervisors.  She can occasionally stoop and crouch, cannot kneel or crawl, and cannot climb ramps, stairs, ladders, ropes, or scaffolds.  She cannot work at heights or in proximity to hazardous conditions.[8]
>
> **Step four**:  Since December 1, 2017, Plaintiff cannot perform past relevant work.
>
> **Step five**:  Prior to November 8, 2021, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including photocopy machine operator, office helper, and housekeeper, such that Plaintiff was not disabled.

AR 893-916.

---

[6] 20 C.F.R. §§ 404.1520, 416.920.

[7] 20 C.F.R. Part 404, Subpart P., App. 1.

[8] Notably, ALJ Meyers' 2022 RFC determination eliminated additional limitations that he had included in his prior 2020 RFC determination regarding Plaintiff's absenteeism, such that ALJ Meyer's 2022 RFC determination was less limiting in terms of Plaintiff's absenteeism and need to be off task.  *See* AR 900; *cf.* AR 990.  Specifically, ALJ Meyers eliminated the limitation that Plaintiff "will be 10% off task at work but still meet minimum production requirements and will be absent from work one time per month." AR 900; *cf.* AR 990.

1      Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 5.

2                                       **LEGAL STANDARDS**

3      Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

4   security benefits when the ALJ's findings are based on harmful legal error or not supported by

5   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.

6   2005).  As a general principle, an ALJ's error may be deemed harmless where it is

7   "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104,

8   1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to

9   determine whether the error alters the outcome of the case."  *Id*.

10     Substantial evidence is "more than a mere scintilla.  It means - and means only - such

11  relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

12  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d

13  747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving

14  conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v.*

15  *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record

16  as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

17  Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

18  susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

19  must be upheld.  *Id.*

20                                       **DISCUSSION**

21     Plaintiff argues the ALJ misevaluated her RFC when he failed to provide adequate

22  reasons for discounting her testimony and medical opinion evidence regarding her absenteeism.

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 6

1    The Commissioner argues the ALJ's decision is free of harmful legal error, supported by

2    substantial evidence, and should be affirmed.

3          At the outset, the Court notes that Plaintiff does not challenge the favorable portion of the

4    ALJ's October 2022 decision finding her disabled effective November 8, 2021.  Dkt. 16 at 2 &

5    n.1.  Accordingly, the Court reviews Plaintiff's assignments of error only as they pertain to the

6    ALJ's determination that Plaintiff was not disabled on her 2017 and 2021 DIB applications

7    during the relevant period from December 1, 2017, until November 8, 2021.

8          **A.**      **The ALJ Erred in Evaluating Plaintiff's Testimony Regarding Absenteeism**

9          Plaintiff testified regarding the impact of her impairments on her absenteeism in a 2017

10   headache questionnaire, 2018 and 2021 function reports, and at her 2020 and 2022 hearings as

11   follows.

12         In a 2017 headache questionnaire filed with the SSA, Plaintiff stated that she had suffered

13   from headaches for approximately eighteen years at that time, and that they prevented her from

14   doing "everything," including working. AR 285.  She explained that her headaches cause

15   "nausea, pain in her left eye, vomiting, and sensitivity to light," and that they can last days if

16   untreated.  AR 285.  Plaintiff noted that she was no longer receiving botox as of 2017 because

17   her insurance would not cover it, but stated that she continued to take Topomax, Dilaudid,

18   additional injections, and use a fentanyl patch.  AR 286.

19         Subsequently, in her 2018 function report, Plaintiff reiterated that her migraines

20   continued to prevent her from working because she is in constant pain, "can't work on

21   narcotics," and always has to "go home to a dark room."  AR 297.  As of 2018, Plaintiff stated

22   that she went grocery shopping once per week, but that she typically relied on others to drive her,

23

though occasionally drove herself.  AR 300.  At that time, Plaintiff stated that she was taking

hyrdromorphone, Topamax, clonazapam, and promethazine.  AR 304.

Two years later, at the June 2020 hearing before ALJ Meyers, Plaintiff testified that the

intensity of her migraines had increased to an 8-10 on a scale of one to ten.  AR 97.  She stated

that they had also increased in frequency and typically occurred every two days with one day off

in between.  AR 84.  Plaintiff asserted that the migraines require her to lay down for an average

of three hours per day.  AR 83, 98.  Plaintiff testified then that she took sumatriptan for her

migraines, but when that did not work, her treating physician, Dr. Shinstrom, would give her a

prescription for Dilaudid.  AR 81.  Plaintiff testified that she continued to use a fentanyl patch

prescribed by Dr. Shinstrom, and that she also used edible THC pursuant to Dr. Shinstrom's

recommendation.  AR 80-81.  Plaintiff also testified in 2020 that, due to her mental impairments,

she has difficulty concentrating and focusing, and that she experiences anxiety and panic attacks.

AR 99-100.

In response to questioning from the ALJ at the 2020 hearing regarding her past

employment, Plaintiff testified that she was able to maintain her employment at a hardware store

from 2009-2014 despite her migraines due to her skills, her employer's flexibility, and the

narcotics she used for migraine pain, namely fentanyl and Dilaudid or Demerol.  AR 85-91.

Plaintiff stated that, on some days, the narcotics she took for her migraines resulted in severe side

effects, such that she was unable to perform her job and was sent home by her employer.  AR 87.

However, Plaintiff testified that her employer retained her in spite of her frequent absences and

mistakes resulting from the side effects of her migraine medications, explaining that she

possessed unique knowledge regarding certain skills required of the job.  AR 87-89.  Plaintiff

ultimately quit the job after she suffered what she described as a "mental breakdown."  AR 46.

1          Subsequently, from the end of 2015 into 2017, Plaintiff testified she was employed to do

2   data entry by a sewage company for a total of approximately eighteen months.  AR 91.  Plaintiff

3   testified that the company provided her with an abbreviated full-time work schedule, and that she

4   was able to work independently without a supervisor watching over her.  AR 75, 91.  Plaintiff

5   explained that she was allowed to make up absences caused by her migraines, narcotic

6   medications, and mental health issues by working mornings, nights, and/or weekends.  AR 91.

7   Ultimately, though, Plaintiff stated that she was fired for her absenteeism because she was only

8   able to work two or three days per week.  AR 74.

9          Thereafter, in a 2021 function report filed with her 2021 applications, Plaintiff asserted

10  that her headaches and fibromyalgia had worsened because she had been taken off the fentanyl

11  patch by her physicians.  AR 1262.  She stated that she suffers from migraines approximately

12  two times per week, and that they last anywhere from one to eight days.  AR 1262.  During a

13  migraine, Plaintiff again asserted that she needs to stay in a completely dark room without any

14  noise.  AR 1262.  As of 2021, Plaintiff stated that she was then taking clonazepam,

15  hydromorphone, Abilify, sertraline, and Flexeril.  AR 1269.

16         Plaintiff additionally attested in 2021 that her mental impairments cause her to sleep for

17  days and prevent her from going out in public.  AR 1262. Plaintiff stated that she is sometimes

18  too depressed to bathe, and that she only eats one meal per day and does not cook.  AR 1263.

19  Plaintiff has a dog that she "lets out the back door," and provides with food and water – tasks

20  that her boyfriend helps her with as well.  AR 1263.  Plaintiff stated in 2021 that she is "terrified

21  of people," and that she does not go out in public or drive herself around.  AR 1265-66.

22  Subsequently, at her September 2022 hearing, Plaintiff again reiterated that her condition had

23  worsened since 2020.  AR 969.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 9

1    In the October 2022 decision currently at issue, the ALJ found that Plaintiff's "medically

2    determinable impairments could reasonably be expected to cause the alleged symptoms" but that

3    her "statements concerning the intensity, persistence, and limiting effects of the[] symptoms

4    [were] not fully supported."[9]  AR 902.  Accordingly, the ALJ was required to provide "specific,

5    clear and convincing reasons" for rejecting Plaintiff's testimony concerning the intensity,

6    persistence, and limiting effects of his symptoms.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039

7    (9th Cir. 2008) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)); *accord Smartt v.*

8    *Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (confirming that the "clear and convincing" standard

9    continues to apply).

10   Here, Plaintiff specifically challenges the ALJ's rejection of her testimony regarding her

11   absenteeism.  Accordingly, the Court addresses only those reasons provided by the ALJ for

12   rejecting Plaintiff's testimony that are pertinent to her absenteeism.

13   Two of the reasons provided by the ALJ pertained solely to Plaintiff's absenteeism as it

14   related to her migraines.  First, in discounting Plaintiff's testimony, the ALJ reasoned that

15   Plaintiff had once stated that her headaches were controlled with opioid medications such that

16   "she can do the things she needs" to do.  AR 903-04 (citing AR 832).  Relatedly, the ALJ cited to

17   Plaintiff's "grossly normal" clinical presentation, neurological findings, and treatment notes from

18   2016-2021.  AR 903-04 (citing AR 444, 448, 542, 627, 743, 754, 770, 775, 784, 1320-22, 1325,

19   1330, 1416, 1419, 1423).

20

21   _____

[9] Previously, in July 2020, ALJ Meyers likewise found that Plaintiff's statements were "not entirely
22   consistent with the medical evidence and other evidence in the record."  AR 991.  In its January 2020
     order, the Court found that the ALJ erred in his evaluation of several medical opinions regarding
23   Plaintiff's absenteeism, and that given those errors, the ALJ should also re-evaluate Plaintiff's testimony
     on remand.  AR 1024 (C21-441 DWC).  In so holding, the Court did not specifically address the ALJ's
     prior reasons for rejecting Plaintiff's testimony.  AR 1024.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 10

1        Plaintiff argues that the ALJ mischaracterized the record, and the Court agrees that

2   review of the longitudinal record – including the records specifically cited by the ALJ – fails to

3   support the ALJ's "grossly normal" characterization.  In particular, the ALJ mischaracterized

4   many of the records in finding that they "do not indicate photophobia or other abnormalities,"

5   when, in fact, the very records cited by the ALJ demonstrate the contrary.  *See, e.g.,* AR 448

6   (Plaintiff presents to Physician's Assistant ("PA") Utter in July 2017, with a bad migraine and

7   even worse nausea); AR 542 (Plaintiff presents to treating physician, Dr. Shinstrom, in April

8   2018, with a migraine that she has had for four days, and with light sensitivity and photophobia);

9   AR 627 (Plaintiff presents to PA Utter in September 2018 on the fourth day of migraine that has

10  not responded to Dilaudid and Excedrin, and is photophobic and with slower than normal gait

11  and flat affect, at which point PA Utter administers injections of Solumedrol and promethazine);

12  AR 754 (Plaintiff presents to PA Christensen in January 2020, after hours suffering from

13  migraine, vomiting, and photophobia, at which point PA Christensen diagnoses a migraine with

14  aura and administers injections of Solumedrol and promethazine); AR 775 (Plaintiff presents to

15  Dr. Shinstrom with migraine and uncomfortable, tearful, and photophobic in October 2019, and

16  Dr. Shinstrom observes that, neurologically, Plaintiff is "nonfocal," and administers Demerol

17  and Phenergan).  The lone April 2019 medical record cited by the ALJ in which Plaintiff advises

18  PA Utter in April 2019 that she was feeling "70% relief of pain" such that she was "able to do

19  the things she wants," following a recent prescription for a fentanyl patch and hydromorphone,

20  does not undermine the weight of the evidence otherwise; nor did it constitute sufficiently clear

21  and convincing evidence for rejecting Plaintiff's testimony regarding absenteeism caused by her

22  migraine pain.  *See* AR 832.

23

1    Additionally, with this reason, the ALJ also referenced Plaintiff's periodic improvement

2    on botox.[10]  AR 903.  However, Plaintiff's occasional improvement on botox did not undermine

3    her testimony because for much of the relevant period, Plaintiff was unable to utilize botox

4    because it was not covered by her insurance.  *See* AR 1423, 1320-21, 1324-25, 1330 (Drs. Koehn

5    and Moren both note on multiple occasions that botox would be best for Plaintiff, but that she is

6    unable to get insurance authorization for it as often as she needs it).

7    Second, regarding Plaintiff's migraine testimony, the ALJ also pointed to evidence of

8    Plaintiff's "medication seeking behavior."  AR 904.  The ALJ first describes evidence from

9    2014-2015 regarding Plaintiff's alleged Demerol-dependence and dismissal from a medical

10   practice.  AR 905-06.  However, those records predate by several years Plaintiff's December

11   2017 onset date in this case.  Moreover, in conjunction with Plaintiff's prior 2015 application,

12   ALJ Basse (whose findings ALJ Meyers purported to adopt in part, as noted above), in fact

13   found in his 2017 decision that the 2014-2015 records now cited by ALJ Meyers in October 2022

14   were "not material to the determination of disability," and ALJ Basse declined to discredit

15   Plaintiff's prior 2017 testimony based on those records.  AR 122.  The Court agrees with ALJ

16   Basse's prior assessment.

17   The ALJ also cites to more recent medical records in which Plaintiff sought early refills

18   and requested specific medications.  AR 906 (citing AR 428, 438, 491, 495, 765, 401, 462, 485,

19   552, 486, 629).  The ALJ cites to these records and to a 2018 urinalysis to suggest that Plaintiff

20   may have been "diverting the medication or otherwise not using them as prescribed."  AR 906.

21

22   ──────────────
[10] The Commissioner also asks the Court to consider additional evidence regarding Plaintiff's
improvement on various migraine medications that the Commissioner acknowledges were not cited by the
23   ALJ.  *See* Dkt. 19 at 7 n.2.  The Court declines to do so because it is required to review the ALJ's
decision "based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations."
*Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009).

ORDER REVERSING THE COMMISSIONER'S
DECISION - 12

1    The records cited by the ALJ indeed demonstrate that Plaintiff sought several early refills during

2    the period following her December 2017 onset date for a variety of reasons, including: travel;

3    because she ran out of medication; because she had an allergic reaction to the medication she

4    was taking at the time; because she believed a medication that she used previously would be

5    more effective; and because her insurance would not cover the desired medication.  *See* AR 765,

6    401, 462, 485, 486.

7         There is no dispute that Plaintiff has relied on numerous medications over the course of

8    many years to treat her migraines, including narcotics.  *See* AR 1415-16 (as cited by ALJ at AR

9    903) (Pain management specialist, Dr. Moren, notes in February 2020 that Plaintiff suffers from

10   twenty-six years of "chronic migraine with a long history of narcotic use to treat her headache

11   pain," but observes that she "now has less narcotics on board, which is excellent," and continues

12   to recommend that she "[m]inimize the use of narcotics" going forward but recognizes that will

13   take time); AR 1416 (noting that the list of medications Plaintiff has tried for her migraines

14   includes CGRP monoclonal antibodies, sumatriptan, Demoral, Topamax, propranolol, botox,

15   zonisamide, Depakote, verapamil, Relpax, Dilaudid, morphine, and a fentanyl patch); *see also*

16   AR 1319 (also cited by the ALJ at AR 903) (Dr. Koehn at Peace Health notes in July 2021 that

17   Plaintiff has tried the following medications:  botox, Emgality, sumatriptan, Excedrin, nalodal,

18   amitriptyline, nortriptyline, Cymbalta, Effexor, Flurbiprofen, Relpax, Imitrex, Maxalt,

19   acetaminophen, ibuprofen, Alleve, morphine, OxyContin, Phenergan, Compazine, Neurontin,

20   magnesium, riboflavin, Depakote, Trazodone, Prozac, Froa, Axert, ketorolac, propranolol,

21   verapamil, and fentanyl).

22        Nor is there any dispute that, at times, Plaintiff's physicians encouraged her to reduce her

23   use of narcotics as a pain reliever.  *See, e.g.,* AR 1423 (Dr. Moren discusses CGRP monoclonal

1   antibody treatment with Plaintiff since her insurance will no longer cover botox, and notes that

2   Plaintiff "may or may not have medication overuse" and further notes that he would like to "get

3   [Plaintiff] off narcotic frequent use," but that could take six months to a year). However, the

4   ALJ here made no finding of substance abuse, let alone material substance abuse, and the fact

5   that Plaintiff frequently sought out treatment and refills for her headaches, actually *supports* her

6   testimony regarding the significant impact that her headaches and related symptoms had on her

7   ability to show up for work. *See Cindy H. v. Comm'r of Soc. Sec.,* 574 F. Supp. 3d 923, 929

8   (W.D. Wash. 2021) (holding that ALJ erred in rejecting Plaintiff's testimony regarding the

9   impact of her migraines when ALJ attributed it to her opioid addiction where Plaintiff's use of

10  opioids "in no way contradict[ed] her testimony regarding the severity of her migraine

11  symptoms" and where ALJ "made no finding that Plaintiff's substance abuse was material to a

12  finding of disability"); *see also* Social Security Ruling ("SSR") 19-4p, *Evaluating Cases*

13  *Involving Primary Headache Disorders*, 2019 WL 4169635, at *3, 6 (Aug. 2019) (noting that

14  headache disorders are "typically severe enough to require prescribed medication" and that

15  medical source records that "document ongoing headaches that persist despite treatment"

16  constitute evidence that help establish evidence of medically determinable impairment ("MDI"));

17  Harvey L. McCormick, 1 Social Security Claims and Procedures § 8:127, Headaches (6th ed.

18  Aug. 2022) (noting that "[t]he use of pain-relief seeking behavior as an important variable in

19  case evaluation is based on the presumption that human beings will avoid pain and seek relief of

20  pain when present").

21      Finally, the ALJ's suspicion that Plaintiff was "diverting" her medications is simply not

22  supported by substantial evidence in the administrative record before the Court, including Dr.

23  Shinstrom's notes regarding her 2018 urinalysis. AR 628 (in treating Plaintiff for bladder

1    infection, Dr. Shinstrom observes that it is "[u]nclear why fentanyl is not showing up" in the

2    toxicology reports, yet reasons that "hydromorphone didn't show up because [Plaintiff] hasn't

3    taken it for a few days").  Dr. Shinstrom in fact refilled Plaintiff's prescriptions that very day –

4    including her prescription for the fentanyl patch – and again in records cited by the ALJ from

5    2019 and 2020.  *See* AR 628, AR 743-44, 784.

6         The ALJ provided two additional reasons for rejecting Plaintiff's testimony regarding

7    absenteeism that related both to Plaintiff's testimony regarding her migraines and her mental

8    impairments.  In particular, the ALJ reasoned that Plaintiff's regular attendance at her medical

9    appointments undermined her testimony.  AR 904, 905.  Specifically, the ALJ found that the

10   absence of evidence that Plaintiff canceled or missed her medical appointments demonstrated

11   that Plaintiff's testimony regarding the impact of her impairments on her ability to show up for

12   work was exaggerated.  The Court, however, rejects the ALJ's comparison of medical

13   appointments to a full workday and finds this reason lacks merit.

14        The ALJ additionally reasoned that evidence regarding Plaintiff's daily activities,

15   including her ability to work in the past in spite of her migraines, undermined her testimony.  AR

16   906.  However, as Plaintiff notes, her past work was not inconsistent with her testimony because,

17   as she testified, she was able to show up to work with migraines only with pain relief from

18   narcotics.  Dkt. 20 at 3; *see also* AR 85-91.  Moreover, she often left work early, required

19   accommodations in scheduling, was unable to complete many workdays, was sent home from

20   work due to the narcotics' side effects, and was ultimately fired from her last job as a result of

21   absenteeism.  Dkt. 20 at 3; *see also* AR 297, 87-89, 46, 74.

22        The additional activities to which the ALJ cited, such as Plaintiff's care for her dying

23   mother, her ability to manage her finances, infrequent grocery shopping, and one-time air travel

to visit her ailing father, also do not support the ALJ's finding.  "[T]he mere fact that a plaintiff

has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking

for exercise, does not in any way detract from her credibility as to her overall disability.  One

does not need to be 'utterly incapacitated' in order to be disabled."  *Vertigan v. Halter*, 260 F.3d

1044, 1050 (9th Cir. 2001); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)

(citations omitted) ("disability claimants should not be penalized for attempting to lead normal

lives in the face of their limitations").

In sum, the ALJ failed to give any clear and convincing reasons for rejecting Plaintiff's

testimony regarding absenteeism caused by her migraines and mental impairments.

**B.**     **The ALJ Erred in Evaluating Multiple Medical Opinions**

In her prior appeal before the Court, Plaintiff challenged ALJ Meyers' 2020 evaluation of

the April 2018 medical opinion from state agency non-examining psychologist, Dr. Michael

Brown, the February 2019 opinion from reviewing, non-examining DSHS psychologist, Dr.

Janis Lewis, and the April 2018 opinion from consultative examiner ("CE"), psychologist, Dr.

Mark Hawley.  *See* AR 1018-25 (Court's prior order in C21-441 DWC); AR 135-41, 144-46 (Dr.

Brown's April 2018 opinion);  AR 695-97 (Dr. Lewis' February 2019 opinion); AR 518-22 (Dr.

Hawley's April 2018 opinion).  The Court concluded that the ALJ erred in finding that Dr.

Brown's opinion regarding Plaintiff's likely absenteeism was not persuasive.  AR 1022, 1024-

25.  Additionally, the Court also held that, given the error regarding Dr. Brown's opinion, the

ALJ should reconsider Dr. Hawley's opinion, and should consider Dr. Lewis' opinion on remand

in the first instance.  AR 1023-24.

In her current appeal, Plaintiff now challenges the ALJ's 2022 evaluation of six medical

opinions, including two of the opinions previously challenged in the earlier appeal:  (1) Dr.

Brown's April 2018 opinion; and (2) Dr. Lewis' February 2019 opinion.  Additionally, Plaintiff

challenges the ALJ's evaluation of four new opinions post-dating the ALJ's 2020 decision,

including an April 2021 opinion from treating physician, Dr. Shinstrom; a March 2022 opinion

from non-examining state agency consultant, Dr. Johnson; an April 2021 opinion from treating

ARNP Carla Weston; and a March 2022 opinion from examining psychologist and CE, Dr.

Hawley.  AR 1041-42, 1046-47, 1058, 1063-64 (Dr. Johnson's opinion); AR 1309-1312 (ARNP

Weston's opinion); AR 1307-08 (Dr. Shinstrom's opinion); AR 1408-13 (Dr. Hawley's

opinion).[11]  The Court addresses each in turn below.

Under regulations applicable to this case, the ALJ is required to articulate the

persuasiveness of each medical opinion, specifically with respect to whether the opinions are

supported and consistent with the record.  *See* 20 C.F.R. § 404.1520c(a)-(c).  An ALJ's

consistency and supportability findings must be supported by substantial evidence.  *See Woods v.*

*Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

### 1.    Dr. Shinstrom's 2021 Opinion

Dr. Shinstrom, who has been Plaintiff's treating physician for years, opined in April 2021

that Plaintiff suffered from migraines, degenerative disc disease, and fibromyalgia, and that her

symptoms would frequently interfere with her attention, concentration, and ability to perform

simple work-related tasks.  AR 1307.  Dr. Shinstrom further opined that as a result of her

impairments, Plaintiff would be absent from work more than four times per month.  AR 1308.

The ALJ found that Dr. Shinstrom's opinion was not persuasive, concluding that it was

poorly supported and failed to indicate which impairment would cause Plaintiff to miss four days

---

[11] Drs. Shinstrom, Hawley, and ARNP Weston have each submitted multiple favorable opinions since
Plaintiff filed her first DIB application in 2015.  However, as noted, Plaintiff challenges here only the
ALJ's evaluation of their most recent 2021 and 2022 opinions.  Dkt. 16 at 9, 11-12.

1    per month.  AR 911.  The ALJ further found that the Dr. Shinstrom's opined limitations were

2    inconsistent with the record.  AR 911-12.

3           Neither the ALJ's supportability nor his consistency findings were supported by

4    substantial evidence.[12]  First, even if Dr. Shinstrom did not provide a narrative explanation

5    within the four corners of his 2021 opinion itself, Dr. Shinstrom's opinion was adequately

6    supported by at least eight years of his own treatment records, including the very records cited by

7    the ALJ in his 2022 decision regarding Plaintiff's migraines.  *See* 20 C.F.R. §§ 404.1520c(c)(1)

8    (explaining that "[t]he more relevant the objective medical evidence and supporting explanations

9    presented by a medical source are to support his or her medical opinion(s) or prior administrative

10   medical finding(s), the more persuasive the medical opinions or prior administrative medical

11   finding(s) will be"); *see also* AR 428, 438-39, 491, 495, 401, 462, 444, 542, 743, 775, 784, 629

12   (Dr. Shinstrom's records as cited by ALJ); AR 123 (confirming that Dr. Shinstrom was

13   Plaintiff's treating physician since at least 2015); *see also generally* AR 375-517, 523-54, 719-

14   851, 1613-40 (Dr. Shinstrom's medical records in AR).

15          Moreover, the ALJ advanced consistency findings regarding Dr. Shinstrom's opinion that

16   were identical to the ALJ's reasons for rejecting Plaintiff's migraine-related testimony, citing to

17   the same records in support.  *See* AR 911 (citing AR 444, 448, 542, 627, 743, 754, 770, 775,

18   784, 1320-22, 1325, 1330, 1416, 1419, 1423); *cf.* AR 903-04 (ALJ's reasons for rejecting

19   Plaintiff's migraine testimony).  For the reasons previously discussed above with Plaintiff's

20   testimony, the Court has already found that the ALJ mischaracterized the cited records, which do

21

22   _____

23   [12] The Court notes that the Commissioner argues that the ALJ properly evaluated Dr. Shinstrom's prior
2018 and 2019 opinions but fails to address the ALJ's evaluation of Dr. Shinstrom's 2021 opinion – the
opinion challenged by Plaintiff here.  *See* Dkt. 19. at 10-12 (arguing that the ALJ reasonably evaluated
Dr. Shinstrom's 2018 and 2019 opinions); *cf.* Dkt. 16 at 9 (citing to AR 1307, Dr. Shinstrom's 2021
opinion, and challenging the ALJ's evaluation of that opinion).

ORDER REVERSING THE COMMISSIONER'S
DECISION - 18

1   not constitute clear and convincing evidence that undermines Plaintiff's related migraine

2   testimony *or* substantial evidence undermining Dr. Shinstrom's opinion regarding Plaintiff's

3   absenteeism.  Moreover, the ALJ further fails to address the fact that Dr. Shinstrom's opinion

4   regarding Plaintiff's absenteeism is largely consistent with *ten* of the eleven other medical

5   opinions addressed by the ALJ in 2022 regarding Plaintiff's absenteeism, including Dr.

6   Shinstrom's own prior opinions, and multiple opinions from ARNP Weston and CE Dr. Hawley,

7   Dr. Brown, Dr. Lewis, and Dr. Johnson, all of which the ALJ also discounted.  *See* AR 908-13.

8         For these reasons, the ALJ erred in his evaluation of Dr. Shinstrom's 2021 medical

9   opinion.

10              **2.      Dr. Brown's 2018 Opinion**

11        In April 2018, Dr. Brown opined that based on her mental impairments, Plaintiff was

12   moderately limited in her ability to complete a normal workday and that she would miss two

13   days of work per month.  AR 144-46.  In 2020, ALJ Meyers found Dr. Brown's opinion partially

14   persuasive but rejected his opinion that Plaintiff would miss two days of work per month, finding

15   instead that Plaintiff would be absent only one day per month.  AR 990, 994.

16        Following the Court's January 2022 reversal and remand on this particular issue, in

17   October 2022, ALJ Meyers subsequently downgraded Dr. Brown's opinion from "partially

18   persuasive" to "not persuasive," and, as noted, omitted ALJ Meyers' own prior 2020 findings

19   regarding Plaintiff's monthly absences from his RFC determination.  AR 900, 909; *cf* AR 994.

20   On reconsideration in 2022, the ALJ found that Dr. Brown's absenteeism opinion was

21   unsupported by the limitations described in his opinion, and that to the extent that Dr. Brown

22   considered Plaintiff's "chronic pain," Dr. Brown was not qualified to make such an assessment.

23   AR 909.  In terms of consistency, the ALJ found that Dr. Brown's opinion was not consistent

ORDER REVERSING THE COMMISSIONER'S
DECISION - 19

1   with Plaintiff's medical records and/or activities for the same reasons the ALJ offered for

2   rejecting Plaintiff's testimony.  AR 909 (referencing "finding no. [five]" regarding Plaintiff's

3   testimony and the longitudinal record).

4          Plaintiff argues that the ALJ ignores the Court's January 2022 ruling regarding Dr.

5   Brown's opinion and again fails to provide an adequate rationale for rejecting his absenteeism

6   opinion.  The Court agrees.  First, contrary to the ALJ's suggestion otherwise, Dr. Brown was

7   indeed entitled to consider Plaintiff's chronic pain in evaluating her RFC.  Moreover, the ALJ's

8   most recent decision fails to set forth any new findings or reasons that would contradict the

9   Court's 2022 determination that Dr. Brown's opinion was adequately supported.  *See* AR 1022

10  (Court's prior findings regarding supportability of Dr. Brown's opinion in C21-441 DWC).

11         Additionally, the ALJ again fails to make adequate consistency findings regarding Dr.

12  Brown's opinion.  While the ALJ generally references "finding no. 5," the Court's review of "the

13  ALJ's full explanation" in accordance with *Kaufmann v. Kijakazi*, fails to shed light on the

14  particular records and statements upon which the ALJ relies in rejecting Dr. Brown's

15  absenteeism limitation.  32 F.4th 843, 851 (9th Cir. 2022); *see* AR 904-05 (ALJ's findings

16  regarding Plaintiff's testimony as to her mental impairments).  Moreover, for the same reasons

17  set forth above regarding Plaintiff's testimony, the ALJ's comparison of Plaintiff's attendance at

18  her medical appointments to a full workday lacks merit and does not constitute substantial

19  evidence in support of the ALJ's finding that Dr. Brown's opinion lacks consistency with the

20  record.  The same is true of Plaintiff's daily activities, also discussed above, and proffered again

21  by the ALJ in rejecting Dr. Brown's opinion.  AR 909.

22         Finally, again, like Dr. Shinstrom, the ALJ further fails to address the fact that Dr.

23  Brown's opinion regarding Plaintiff's absenteeism is largely consistent with *ten* of the other

1    eleven medical opinions addressed by the ALJ in 2022 regarding Plaintiff's absenteeism,

2    including Dr. Shinstrom's opinions, multiple opinions from ARNP Weston and CE Dr. Hawley,

3    Dr. Lewis, and Dr. Johnson, all of which the ALJ also discounted.  *See* AR 908-13.

4                    **3.      Dr. Lewis' February 2019 Opinion**

5              In February 2019, non-examining DSHS psychologist, Dr. Lewis, reviewed Plaintiff's

6    psychiatric medical records and diagnosed bipolar disorder.  AR 695-97.  Dr. Lewis opined that

7    Plaintiff was markedly limited in her ability to perform activities within a schedule, maintain

8    regular attendance, and to be punctual.  AR 696.

9              In 2020, ALJ Meyers failed to evaluate Dr. Lewis' opinion, and, in 2022, the Court

10   ordered the ALJ to evaluate the opinion in the first instance on remand.  AR 1023 (C21-441

11   DWC).  The ALJ subsequently found that Dr. Lewis' opinion was not persuasive because it was

12   unclear that Dr. Lewis was the person who in fact completed the form, and because the form

13   itself was incomplete.  AR 913.

14             Plaintiff argues that the ALJ erred in finding that it was unclear that Dr. Lewis completed

15   the opinion, noting the Court's January 2022 order identifying the medical opinion as one from

16   "Dr. Lewis."  Dkt. 16 at 10 (citing AR 1023). Plaintiff thus contends the opinion was "clearly" a

17   medical opinion that required evaluation.  Because the Court is remanding for the ALJ to

18   reconsider Plaintiff's testimony and other medical opinions, remand is appropriate for the ALJ to

19   develop the record further to confirm the identity of the author of the February 2019 medical

20   opinion and to subsequently evaluate it on the merits.

21                    **4.      Treating ARNP Weston's April 2021 Opinion**

22             ARNP Weston, who has been treating Plaintiff regularly since October 2010, submitted

23   an April 2021 opinion in which she noted that Plaintiff had been diagnosed with mental

ORDER REVERSING THE COMMISSIONER'S
DECISION - 21

1   impairments that included bipolar disorder, anxiety, and chronic PTSD, along with fibromyalgia,

2   IBS, chronic, severe migraines, interstitial cystitis, and narcolepsy.  AR 1310.  ARNP Weston

3   opined that Plaintiff possessed an extreme limitation in her ability to sustain an ordinary

4   workday.  AR 1310.  In support, ARNP Weston explained that Plaintiff "could not attend work

5   on a regular basis due to migraines and stress," and that she "lost a lot of work time" and "was

6   finally fired."  AR 1311.

7         The ALJ found ARNP Weston's 2021 opinion not persuasive.  AR 912.  In terms of

8   supportability, the ALJ noted that ARNP Weston did not treat Plaintiff for her physical

9   impairments, and further noted the ALJ's own step two findings that Plaintiff's interstitial

10  cystitis and narcolepsy did not constitute MDIs, or, in the alternative, severe impairments.  AR

11  913, 897.  The ALJ further found that although ARNP Weston "provide[d] a notable amount of

12  information as [a] rationale for [Plaintiff's] mental limitations," ARNP Weston's "rationale

13  [was] at least partly taken from [Plaintiff's] subjective report."  AR 913.  The ALJ found ARNP

14  Weston's opinion was not supported by Plaintiff's presentation as discussed in her own treatment

15  notes, which the ALJ characterized as "usually normal," including observations regarding

16  Plaintiff's "speech, thought processes, cognition, and motor activity."  AR 913.  The ALJ

17  additionally suggested that to the extent that other records from ARNP Weston noted that

18  Plaintiff was "upset" or "anxious," such observations were the result of Plaintiff's stress of

19  caring for her mother or conflicts with her boyfriend.  AR 913.

20        Plaintiff contends that the ALJ mischaracterized both ARNP Weston's opinion and the

21  record, and, as a result, failed to offer substantial evidence in support of his evaluation of the

22  opinion.  Dkt. 16 at 10.

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 22

1    The Commissioner counters that the fact that two of ARNP Weston's named impairments

2    – narcolepsy and interstitial cystitis – were not deemed severe impairments by the ALJ indeed

3    undermined the consistency of ARNP Weston's opinion.  Dkt. 19 at 13.  The Court, however,

4    disagrees, and notes that the issue here is whether ARNP Weston's opined *absenteeism*

5    limitation was supported by substantial evidence.  That ARNP Weston noted that Plaintiff had

6    received diagnoses of narcolepsy and interstitial cystitis, which the ALJ later found were not

7    severe impairments, did not undermine the consistency of ARNP Weston's absenteeism opinion

8    given that her opinion regarding Plaintiff's ability to show up regularly for work was based

9    primarily on Plaintiff's migraines and mental impairments – not on her interstitial cystitis or

10   narcolepsy. [13] AR 1311.

11   The Commissioner also argues that the ALJ reasonably found that ARNP Weston's

12   opinion lacked supportability because she relied on Plaintiff's self-reports, because Plaintiff's

13   symptoms stemmed from situational stressors, and because ARNP Weston's medical records

14   "belied" her opined limitations.  Dkt. 19 at 14.  The Commissioner additionally argues that the

15   ALJ's obviously mistaken interpretation of ARNP Weston's handwriting from her April 2021

16   opinion should be given effect because the ALJ is the "final arbiter."  Dkt. 19 at 15.

17   The Court disagrees.  The ALJ here erred in discounting ARNP Weston's opinion based

18   in part on Plaintiff's subjective self-reporting, given ARNP Weston's extensive treatment history

19   and the other objective bases for her opinion.  *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th

20

21   [13] The ALJ did not make any additional consistency findings regarding ARNP Weston's 2021 opinion
22   other than to state in a conclusory fashion that it was "inconsistent with the longitudinal record."  AR
     912-13.  While it is true that the ALJ made consistency findings regarding ARNP Weston's prior
     "statements" or opinions from August and October 2018 and February 2019, the ALJ did not offer those
23   same consistency findings with respect to ARNP Weston's 2021 opinion.  *See* AR 912 (discussing AR
     866-67, 665-66, 678-79).

1  Cir. 2017) (noting that psychiatric "[d]iagnoses will always depend in part on the patient's self-

2  report").  Ninth Circuit precedent is clear that:

3          [p]sychiatric evaluations may appear subjective, especially compared to evaluation
           in other medical fields. Diagnoses will always depend in part on the patient's self-
4          report, as well as on the clinician's observations of the patient. But such is the nature
           of psychiatry.
5

6  *Id.*  "Thus, the rule allowing an ALJ to reject opinions based on self-reports does not apply in the

7  same manner to opinions regarding mental illness." *Id.; cf. Tommasetti*, 533 F.3d at 1041

8  (quoting *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)) (holding that

9  an ALJ may reject a physician's opinion "if it is based 'to a large extent' on a claimant's self-

10  reports that have been properly discounted as incredible").

11          Furthermore, the stress that Plaintiff experienced in her role as a caregiver for her mother

12  and in her interactions with her boyfriend did not negate the impact that Plaintiff's other

13  diagnosed mental impairments had on ARNP Weston's opined absenteeism limitation.  The

14  longitudinal record, including the specific records cited by the ALJ, shows significant mental

15  health symptoms along with multiple situational stressors.  There is no evidence that Plaintiff's

16  symptoms and mental impairments would not persist in the absence of the situational stressors.

17  Nor did the ALJ's additional citations to Plaintiff's at times "normal" speech, thought processes,

18  cognition, and motor activity establish that Plaintiff's mental impairments were simply

19  "situational" such that they undermined ARNP Weston's opinion regarding Plaintiff's

20  absenteeism.  AR 913 (citing AR 674-76, 680-82, 708, 875-77, 883-84, 1396-98, 1598-1610).  In

21  fact, several of the specific records cited by the ALJ demonstrate findings contrary to the ALJ's

22  characterization of the mental status findings as "normal."  *See, e.g.,* AR 674 (noting Plaintiff

23  possessed "less than normal" motor activity and impacted judgment); AR 675 (noting Plaintiff's

1  "longstanding emotional issues"); AR 875 (noting Plaintiff's suicidal thoughts); AR 680 (noting

2  Plaintiff's "distorted" perception and "numb affect"); AR 1396 (noting Plaintiff's compromised

3  judgment and negative perceptions); AR 1599 (noting Plaintiff's compromised judgment and

4  negative perceptions).

5        Finally, the Court agrees with Plaintiff that the ALJ mischaracterized ARNP Weston's

6  2022 opinion as stating that Plaintiff "cannot work because she 'freaks out due to physical

7  condition.'" AR 913 (citing AR 1311).  In fact, closer review of ARNP Weston's opinion reveals

8  that she referenced Plaintiff's need for "a lot of breaks due to [her] physical condition."  AR

9  1311.

10       For these reasons, the ALJ's evaluation of ARNP Weston's 2022 opinion regarding

11  Plaintiff's absenteeism was not supported by substantial evidence.

12       **5.      Dr. Johnson's and CE Dr. Hawley's March 2022 Opinions**

13       Finally, Plaintiff challenges the ALJ's evaluation of the March 2022 opinions from state

14  agency non-examining psychologist, Dr. Johnson, and from CE, Dr. Hawley.[14]  Dkt. 16 at 12;

15  AR 1408-13 (Dr. Hawley's 2022 opinion); AR 1041-42, 1057-58 (Dr. Johnson's 2022 opinion).

16       On March 3, 2022, CE Dr. Hawley reviewed records, examined Plaintiff, and

17  administered several tests, in offering an opinion for the second time in the case.  AR 1408-13.

18  Dr. Hawley diagnosed somatic symptoms disorder with predominant pain, major depressive

19  disorder, unspecified personality disorder, mild cannabis disorder, and alcohol use disorder in

20  full sustained remission.  AR 1412.  Regarding Plaintiff's absenteeism, Dr. Hawley opined that

21

22

23

[14] The Commissioner mistakenly assumes that Plaintiff challenges Dr. Hawley's 2018 absenteeism opinion as opposed to Dr. Hawley's 2022 absenteeism opinion.  *See* Dkt. 19 at 16 n.4.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 25

1   Plaintiff's "overall ability to complete a typical workday or work week without interference from

2   mental health symptoms is markedly impaired."[15]  AR 1413.

3          Subsequently, on March 16, 2022, on initial administrative review of Plaintiff's 2021

4   DIB application (the review of which the Appeals Council consolidated for purposes of this

5   appeal), state agency psychologist, Dr. Johnson, found that Plaintiff possessed two marked

6   Paragraph B listings in evaluating her mental impairments, thus resulting in a finding that

7   Plaintiff was disabled effective March 17, 2021.  AR 1063, 1042, 1058.  In support of the

8   finding, Dr. Johnson reviewed and relied on Dr. Hawley's 2022 mental status examination and

9   opinion.[16]  AR 1042; *see also* AR 909 (noting that Dr. Johnson relied on Dr. Hawley's March

10  2022 evaluation).

11         The ALJ found that Dr. Hawley's 2022 opinion was "poorly supported and inconsistent

12  with the record."  AR 910.  In support, the ALJ suggested that "[t]he sedation and slowed speech

13  and motor activity observed by Dr. Hawley" in 2022 was not consistent with Plaintiff's overall

14  treatment record.  AR 909; *see* AR 1410 (Dr. Hawley observes upon examination that Plaintiff's

15  "[p]sychomotor activity was somewhat retarded," that she possessed a "mild latency of

16  response" and a "moderately sedated" appearance, and that she "had a slow rate and rhythm of

17  ─────────────────────

18  [15] Dr. Hawley's assessment was in line with his previous assessment in his 2018 opinion (an absenteeism
    opinion the Court previously ordered that the ALJ reconsider on remand).  *See* AR 521 (Dr. Hawley's
19  April 2018 opinion that Plaintiff's "[a]bility to maintain regular attendance in the workplace is markedly
    impaired"); AR 1023 (Court's January 2022 order requiring ALJ to re-evaluate Dr. Hawley's 2018
20  opinion on remand).  Plaintiff, however, does not challenge the ALJ's re-evaluation of Dr. Hawley's 2018
    opinion, but instead limits her challenge to the ALJ's evaluation of Dr. Hawley's 2022 opinion.  *See* Dkt.
    16 at 12.

21  [16] The Commissioner mistakenly assumes that Dr. Johnson relied on Dr. Hawley's 2018 opinion as
    opposed to his 2022 opinion.  *See* Dkt. 19 at 16 & n.2.  However, this was not the case.  *See* AR 1042 (Dr.
22  Johnson's discussion of Dr. Hawley's opinion, which incorporates diagnoses that Dr. Hawley made for
    the first time in 2022); *cf.* AR 521 (Dr. Hawley diagnoses depression and personality factors associated
23  with chronic pain in 2018), 1412 (Dr. Hawley diagnoses somatic symptoms disorder with predominant
    pain, major depressive disorder, unspecified personality disorder, mild cannabis disorder, and alcohol use
    disorder in full sustained remission in 2022).

speech"). However, as stated above in the Court's review of the ALJ's evaluation of ARNP Weston's 2022 opinion, even if Plaintiff's speech, appearance, and motor activity were slower than normal at Dr. Hawley's 2022 examination, such a finding would not undermine Dr. Hawley's opined limitation regarding Plaintiff's ability to complete a normal workday or her absenteeism. *See* AR 1413.

As for Dr. Johnson's 2022 opinion, the ALJ similarly found that the opinion was "insufficiently supported and inconsistent with the longitudinal record." AR 909. In terms of support, the ALJ found that Dr. Johnson failed to provide a sufficient rationale for his Paragraph B assessment other than Dr. Hawley's March 2022 opinion, which the ALJ found was itself unpersuasive. However, as noted, the ALJ erred in evaluating Dr. Hawley's 2022 opinion; thus, this was not a sufficient reason for finding Dr. Johnson's opinion unsupportable.

The ALJ further found that Dr. Johnson's opined marked limitations were inconsistent with the treatment evidence "as discussed above at finding no. 5." AR 910. Again, for the reasons already discussed regarding Drs. Shinstrom's and Brown's opinions, having reviewed the ALJ's "full explanation" at "finding five," the Court is unable to ascertain upon which particular records and statements the ALJ relies in rejecting Dr. Johnson's opinion. *See Kaufmann,* 32 F.4th at 851. Moreover, the ALJ's subsequent reliance on state agency non-examining psychologist, Dr. Comrie's 2018 opinion did not itself constitute substantial evidence that justified the rejection of Dr. Hawley's opinion. This is especially true given the consistency of Dr. Hawley's absenteeism opinion with ten of the eleven other medical opinions addressed by

the ALJ in 2022 regarding Plaintiff's absenteeism, all of which the ALJ also discounted.[17] *See* AR 908-13.

For these reasons, the ALJ erred in evaluating the above medical opinions. Because the errors impacted the ALJ's subsequent step four RFC assessment and step five findings, they were not harmless.

**C.     Remedy**

Plaintiff asks the Court to remand this case with instructions for an immediate award of benefits for the period from December 1, 2017, through November 7, 2021. Dkt. 16 at 13-14. Before remanding a case for an award of benefits, the three requirements of the "credit-as-true" test must be met. First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)). Second, the Court must conclude "'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" *Id*. In so doing, the Court considers the existence of "'outstanding issues'" that must be resolved before a disability determination can be made. *Id*. (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014)). Third, the Court must conclude that, "'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" *Id*. (quoting *Garrison*, 759 F.3d at 1021). Even with satisfaction of the three requirements, the Court retains flexibility in determining the proper remedy. *See id.*

---

[17] Of the twelve medical opinions regarding Plaintiff's absenteeism, only state agency non-examining psychologist, Dr. Comrie's August 2018 opinion was consistent with the ALJ's rejection of the opined absenteeism limitations. *See* AR 155-56, 159-61. Dr. Comrie opined that Plaintiff was only moderately limited in her ability to complete a normal workday and work week on administrative review at the reconsideration level of Plaintiff's 2017 DIB claim. AR 160. In his 2022 decision, ALJ Meyers found Dr. Comrie's opinion persuasive. AR 908-13.

1    While this case has a lengthy history, and the Court acknowledges that remand may

2 constitute the third "bite at the apple" for the Commissioner in terms of evaluating Plaintiff's

3 testimony and some of the medical opinions, it nevertheless finds that not all the conditions for

4 an award of benefits are met. [18]   Although the record appears to have been fully developed and

5 ALJ Meyers again failed to provide sufficient reasons for rejecting multiple medical opinions

6 and Plaintiff's testimony regarding her absenteeism limitations, it is not clear that even if the

7 improperly rejected evidence were credited as true, an ALJ would be required to find Plaintiff

8 disabled.  *See Treichler*, 775 F.3d at 1103-04 (instructing that the second prong of credit-as-true

9 test requires a court to "consider whether the record as a whole is free from conflicts,

10 ambiguities, or gaps, whether all factual issues have been resolved, and whether the claimant's

11 entitlement to benefits is clear under the applicable legal rules").  Rather, the Court finds that

12 further administrative proceedings would be useful in order to allow the ALJ to reevaluate the

13 improperly rejected opinions and to reconsider Plaintiff's testimony.  Accordingly, remand for

14 further administrative proceedings is the proper remedy.

15                                          **CONCLUSION**

16    For the reasons set forth above, the Commissioner's final decision is **REVERSED** and

17 this case is **REMANDED** for further administrative proceedings under sentence four of 42

18 U.S.C. § 405(g).  On remand, the ALJ shall reconsider Plaintiff's disability status during the

19 relevant period from December 1, 2017, through November 7, 2021.  In doing so, the ALJ shall

20 reassess the medical opinion evidence and Plaintiff's testimony regarding her absenteeism

21

22

23 [18] In so holding, the Court recognizes that there are several "new" opinions from 2021 and 2022 that ALJ Meyers evaluated for the first time in his 2022 decision.  Admittedly, though, most of the "new" opinions were from medical sources who submitted prior opinions, and the "new" opinions were typically in line with their prior opinions.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 29

1    limitations pursuant to the Court's above discussion and findings.  The ALJ shall also recalibrate

2    Plaintiff's RFC and proceed to the remaining steps of the disability determination as appropriate.

3          Dated this 31st day of October.

4

5

6    _____
     S. KATE VAUGHAN
7    United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 30